CHARLES M. TOWNES *et al.*, COMPLAINANTS, APPELLANTS,
*v.* J. B. COX, DEFENDANT, APPELLEE.

(*Jackson*, April Term, 1931.)

Opinion filed June 11, 1931.

Maddox & Maddox, for complainants, appellants.

J. C. R. McCall, for defendant, appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

This is an appeal from a decree of the chancellor made with respect to the partition of certain property in Huntingdon, from which the complainants have appealed.

On May 20, 1884, Jo R. Hawkins and James P. Priestly entered into a contract as follows:

"Know all men by these presents, that we, Jo R. Hawkins & James P. Priestly both of the town of Huntingdon and County of Carroll, State of Tennessee have this day entered into the following contract—That is to say the said Hawkins for the consideration of one dollar to him paid the other consideration hereafter mentioned doth hereby sell, transfer and convey unto the said Priestly the one undivided one-half interest in and to the following described town lot situated in said town of Huntingdon and described as follows.

(Description follows.)

"And it is mutually agreed between us as follows: that is to say we will during the present year erect upon said lot a two-story brick house, and that said Priestly is to pay for the construction of said house up to the second story, except putting up the stair steps and said Hawkins is to pay for putting up the remainder of the house including the stair steps. Except the roofing which is to be put on and paid for by us jointly.

"Said Priestly is to own and have full control of said house up to the second story, except the stairway and said Hawkins is to own and have full control of the stairway and of the second story of said house. And to carry out the spirit of this contract we hereby mutually convey to each other all interest in said house which may be necessary to the full enjoyment of our respective interest therein as above set out."

This deed was duly acknowledged and registered.

Some years later Hawkins conveyed his interest in the property to H. C. Townes, the deed reciting that it was "intended by this conveyance to convey unto the said Townes the one undivided half interest in said lot & and entire upper story of the brick house thereon, together with the stairway leading to the same. Said upper story is now occupied by said Townes and myself as law offices. But I do not convey to him any portion of the house below said law offices, except said stairway, as said lower part of said building belongs to J. P. Priestly."

Townes died and devised his interest in this property to his widow. Later she died intestate, and this suit is by her heirs at law for sale for partition of the entire property, on the theory that they own an undivided one-half interest in all of said property.

Priestly likewise died and his estate was wound up in the chancery court. The defendant Campbell bought the interest of Priestly in said property and has occupied the first story thereof as a doctor's office ever since. The deed of the Clerk & Master to Campbell conveyed "the one-half undivided interest in the above described town lot with the entire lower story of the building located thereon, except the stairway leading to the upper story of said building."

A stipulation of facts was filed from which it appears that a two-story building was erected on said lot by Hawkins and Priestly as contemplated; that since the erection of the building Hawkins and his successors in title had occupied the second story and Priestly and his successors in title had occupied the first story; that the owners of the two interests had divided the taxes and expense of repairs on the roof, and that each owner had paid the expense of repairs and improvements to his story.

The chancellor held that under the original contract Priestly took a one-half interest in the lot of land and that the lower story of the building became his absolute property. That Hawkins took a one-half interest in the lot of land and became the absolute owner of the second story of the building and the stairway leading to the second floor.

The chancellor further held that complainants were entitled to have a partition of the one-half undivided interest in the lot of land and of the upper story and stairway leading thereto but that complainants were not entitled to partition the interest of defendant in the property or have that interest sold for partition or to have said real estate including the building as a whole sold for partition, and it is from this decree that complainants have appealed.

The contention of complainants is that the provisions in the contract or deed between Priestly and Hawkins relating to the possession, ownership and use of the respective stories of the building were mere limitations upon the use of the building and not conveyances of exclusive title to the respective stories; that Priestly and Hawkins became tenants in common of the entire property with limitations indicated upon their right to the use of the building.

The complainants do not sustain their construction of the deed by the citation of any authority. We think the construction given to the deed by the chancellor was substantially correct.

Real estate may be divided horizontally as well as vertically, each separate layer or stratum becoming a subject of inheritance, taxation, incumbrance, levy or sale precisely like the surface. The coal may be sold to one man, the iron to another, or to others, each person

taking a deed in fee simple, and the surface may be retained by the owner, or conveyed to another. *Murray* v. *Allred,* 100 Tenn., 100; *McBurney* v. *Coal & Coke Co.,* 121 Tenn., 275; *Northcutt* v. *Church,* 135 Tenn., 541.

A building may be divided in the same way and the different floors or the different rooms be separately conveyed and owned.

"Buildings may be realty although severed: As the ownership of land may be divided by horizontal as well as vertical planes, it is not sufficient to sever the ownership of the fixture from that of the soil to convert a real fixture into personal property. The test is found in the question, Has the owner of the fixture the right to leave it permanently on the land? If he has, the fixture still remains land. Therefore, one man may have an inheritable estate in a building, although another own the land on which it stands. The same is true of a single story, or even a single room in a house, although, if such a house or chamber be destroyed, all interest of the owner thereof in the land on which it stood might thereby be lost." 1 Washburn on Real Property, section 20.

"There are exceptions to the general rule, that land includes everything above and below the surface. Thus, a man may have an inheritance in an upper chamber, though the lower buildings and the soil be in another, and it will pass by livery. Co. Litt. 48b. Ejectment will lie for a house, without any land; and a house erected by A on the land of B with permission, or under contract, belongs to A as personal property. *Doty* v. *Gorham,* 5 Pick., 487; *Marcey* v. *Darling,* 8 id., 283; (*Howard* v. *Fessenden,* 14 Allen, 124, 128; *Pullen* v. *Bell,* 40 Me., 314; *Dame* v. *Dame,* 38 N. H., 429). It is usual, in such a city as London, for different persons to have several freeholds in the same spot. The cellar may belong to one person,

and the upper rooms to another. *Doe* v. *Burt,* 1 T. R., 701. The lease of a cellar, or other room in a house, gives no interest in the land; and if the house be destroyed, the lessee's interest is gone. *Winton* v. *Cornish,* 5 Ohio, 478 (post 468N). A grant of water does not pass the soil beneath, but it passeth a right to fishing. Co. Litt. 4b." 4 Kent Com., *401, Note e.

■ The instrument before us obviously vested exclusive title to the first story of the house in Priestly, except the stairway, and exclusive title to the second story of the house in Hawkins. Each was "to own and have full control" of his portion of the building, and, in the language of the deed, "to carry out the spirit of this contract we hereby mutually convey to each other all interest in said house which may be necessary to the full enjoyment of our respective interests therein as above set out."

We think the language used is destructive of the idea of a common ownership of the entire premises. Manifestly, it was the intention of Hawkins and Priestly that each should own his part of the building in severalty.

■ Partition is regulated by statute in this State and it is not necessary to consider common-law authorities. Section 5010, Thompson's-Shannon's Code, provides that "any person having an estate of inheritance, or for life, or for years, in lands, and holding and being in possession thereof, as tenant in common or otherwise, with others, is entitled to partition thereof, or sale for partition, under the provisions of this chapter."

The two stories of this building being owned in severalty, there is no possession thereof by one owner with the other "as tenant in common or otherwise." Accordingly there can be no partition as between the owner of one story and the owner of the other story.

The complainants herein own the second story of the building as tenants in common and they may have a sale thereof for partition, as decreed by the chancellor. Likewise, the complainants herein own a one-half undivided interest in the lot of land or ground in common with the defendant. We think, therefore, complainants are also entitled to have a sale of the land or soil. It is to be observed, however, that the land or soil, under the contract between Hawkins and Priestly, is burdened with the support of the entire building. The first story is burdened with the support of the second story. The owner of the second story has an easement of subjacent support in the first story and the owner of the first story, indeed both owners, have an easement of support in the land.

The lot or the land therefore cannot be sold freed from the easement of support in favor of the owners of the two stories of the building. This estate in common in the land, from its inception, was charged with this burden of support. In fact, the estate in common appears to have been created to bear the burden of the support of the building. So that if the common estate is sold, it must be sold subject to the burden of supporting the building. Since the building was erected in 1884, there is an easement of support thereof upon the land, arising by prescription as well as by contract.

The case is similar to one where the owner of the soil alienates the minerals, reserving the surface. He is not presumed to have parted with the right of that support to the surface by the minerals which he had ever before enjoyed. The vendee of the minerals is not entitled to remove them all but only so much as he can get, leaving a reasonable support for the surface of the land. *Humphreys* v. *Brogden*, 12 Q. B., 739, 17 Eng. Rul. Cas.,

407; *Harris* v. *Ryding,* 5 Mees. & W., 60. For other illustrations see Washburn on Real Property, *480.

With this modification, the decree of the chancellor will be affirmed and the case will be remanded for further proceedings.