203 So.2d 598 (1967)
William B. WIENER et al.
v.
Dr. Ludwell C. PIERCE et al.
No. 44533.
Supreme Court of Mississippi.
November 6, 1967.
*600 John H. Stennis, Watkins, Pyle, Edwards & Ludlam, Jackson, for appellants.
Howard C. Ross, Jr., Jackson, for appellees.
INZER, Justice:
This is an appeal from a decree of the Chancery Court of the First Judicial District of Hinds County denying an injunction to restrain appellee, Dr. Ludwell C. Pierce, from leasing to tenants the basement of his building. Appellants are a group of physicians, dentists, and persons in related professions who compose a majority of an unincorporated association known as University Plaza Group. Dr. Pierce, who is also a member of the University Plaza Group, was defendant and cross-complainant below, and he here cross appeals from that part of the decree which enjoined him from constructing another building and dismissed his cross-bill. We affirm on direct and cross appeal.
Prior to March, 1955, a group of physicians, dentists and persons in related professions entered into discussions relative to the purchase of some property for the relocation of their offices in order that they would be more accessible and convenient for their patients. The group acquired an option on the property known as 500 East Woodrow Wilson Avenue and employed an architect to advise them as to the type of building or buildings that would be most suitable for their purpose. They also employed an attorney to advise them and to prepare the necessary legal documents. They reached an agreement as to how the property would be divided, the type of structures that would be built, how the buildings would be used and other details necessary to carry out their purpose. The necessary papers were prepared to effect their agreements; a survey of the property was made and a plat showing the divisions of the property was prepared. On March 31, 1955, they exercised their option and received a deed conveying the property to them as tenants in common. They then executed deeds conveying designated lots to each other as individual owners. The land was divided into sixteen lots laid out along the eastern and western boundaries of the tract with a ten foot alley for the use of all the owners behind it. The center portion was reserved for parking lot, drive-way, and sidewalks for the common use. All the deeds contained the same mutual covenants as to the use of the properties. The covenants provided that only medical, dental or related professional office buildings could be built on the lots. Only one building or structure could be built on any one lot, but the construction of one building on two or parts of two lots was not prohibited. Provision was made as to the cost, location from curb and property line. It was provided that these covenants would run with the land and be binding on the present owners and *601 all persons claiming under them until January 1, 2004.
The group also executed a contract implementing the provisions of the deed. This contract provided that the area designated as common property on the plat, which was attached to the contract and deed, would be for the common use of all the owners. The common property would be developed and maintained by an organization of the owners through elected officers, who would assess the costs against each lot. The officers' powers, duties, and terms of office were described. The owner or owners of each lot was given one vote in the association. Restrictions upon the use of the buildings to be constructed were the same as those set out in the deed, and there were provisions for the type of structures to be built. It was also agreed that in the event a lot was offered for sale it could be sold only to a person approved by a majority of the owners. However, if a majority refused to approve a prospective purchaser, then any one of or a majority of the owners could buy the property at a price equal to any bona fide offer to the seller. It was further provided that an owner could not sell his lot separate from his interest in the common property.
Dr. Pierce became the owner of two lots designated on the plat as Lots "O" and "P". He constructed a building on Lot "P" and part of Lot "O". His building was constructed with a basement. The owners of two other lots also had basements under their buildings. Sometime after construction Dr. Pierce rented the basement of his building to tenants who were within the designated class. A majority of the lot owners objected. A dispute also arose relative to Dr. Pierce's allowing the alley behind his lot to become blocked at times and his failing to pay his part of the assessment for maintenance of the common property. Furthermore, Dr. Pierce proposed to build another building on the remaining portion of Lot "O" without submitting plans for approval by the group as required by the contract.
These disputes resulted in the filing of a bill of complaint against Dr. Pierce as well as against the other individual owners who did not join as complainants. The bill asked that Dr. Pierce be enjoined and directed to specifically perform the contract in the following particulars: (1) that he be permanently enjoined from leasing to tenants for compensation one floor of what complainants termed a multi-story building; (2) that he be enjoined from commencing the erection of a building on Lot "O" until the plans and specifications had been submitted to and approved by the Executive Committee of the University Plaza Group; (3) that he be permanently enjoined from encouraging and permitting automobiles to park in a common alley of the property; and, (4) that he be directed to pay his pro-rata share of assessments made by the group for maintenance of the common service area.
Dr. Pierce answered denying that plaintiffs were entitled to any injunctive relief but admitting that he probably owed some amount for maintenance of the common property. He made his answer a cross-bill wherein he sought to have the court partition the common property by setting aside to him his pro-rata share of the common service area. He also alleged that the contract which the complainants sought to enforce was void for the reason that the members had consistently failed to abide by its terms and conditions. The answer to the cross-bill denied that the common property was subject to partition or that the contract was void for any reason.
After a lengthy trial the chancellor refused to enjoin Dr. Pierce from leasing the basement portion of his building but, with modifications, granted the remaining injunctive relief requested and required Dr. Pierce to pay his pro-rata share of the assessments for maintenance of the common service area. The chancellor ruled that Dr. Pierce was not entitled to the relief prayed for and dismissed his cross-bill. *602 The cost of the litigation was taxed equally between complainants and Dr. Pierce.
The principal assignment of error on direct appeal is that the trial court erred by refusing to enjoin Dr. Pierce from renting the basement portion of his building. That part of the contract relied upon by appellants reads as follows:
5. It is understood and agreed that only one (1) single story structure shall be erected, altered, placed or permitted to be constructed on any one (1) lot. It is not intended that this shall prohibit basements or the construction of a one (1) single story structure upon one (1) or a portion of another lot. The construction or building plans of each proposed structure shall be submitted to the Executive Committee herein, and an architect of their selection for consultation for acceptance and approval prior to the beginning of construction. The purpose of above is to insure that the type of building will be erected in accordance with the purposes of this project and to keep the architectural designs in symmetry and conformity.
Appellants contend that although there was nothing actually written in the deed or in the contract that prohibited Dr. Pierce from renting any portion of his building, there was an understanding between the parties that the use of the basement would be limited to storage, utilities, and like purposes. Appellee objected to the testimony offered by appellants to sustain this position on the ground that appellants were attempting to vary terms of written instruments by parol evidence. The court reserved its ruling and allowed appellants to make up the record on this point. After appellants rested, the chancellor ruled on the objection and, among other things, said, (R.427):
Now, construing these contracts as a whole, the terms are clear and unambiguous, and to engraft an exception in the contract that the basement could not be rented would be engrafting an extra limitation in the use of the property and in restricting the use of the property, which the parties never agreed upon, nor did they contemplate it or discuss it during their negotiations.
* * * * * *
Now, the parties to this suit are all high type, high class, well educated and intelligent professional men. We don't have a case of anybody being overreached or misled. They had the advice of a very able lawyer, and I hold as a matter of law that their failure to restrict the subrenting of the basement part of their buildings permits them to sublet and rent it because there is no restriction otherwise.
Although the chancellor sustained the objection, it is clear that he nevertheless considered the testimony and found that it was not sufficient to show an agreement to restrict the use of the basement. Having carefully considered the evidence on this point in the light most favorable to appellants, we, too, are of the opinion that it is insufficient to establish an agreement between the parties to restrict the use of the basement. All the parties agree that there was no restriction upon renting the main floor of the building to persons within the designated class. In fact, many do rent this part of their building, although none, other than Dr. Pierce rent basement space. Appellants contend that the contract, particularly paragraph 5, is ambiguous and that parol evidence is admissible to show the intention of the parties. We agree with the chancellor that the contract is not ambiguous, but even if it might be said that the contract is ambiguous and that parol evidence is admissible to show the circumstances under which it was made and the nature, object and purpose of the language used, the testimony offered does not show a meeting of the minds to limit the use of the basement to storage and like purposes.
*603 There is no doubt that many of the group thought that basements would be limited to such uses, but there is no evidence that Dr. Pierce ever agreed to it. Mr. Shelby Rogers, the attorney who prepared the instruments and who was present when the agreements were finalized, testified that the matter relative to the renting of the basements was never discussed in his presence and that if any such agreement had been made, he would have put it in the contract. What appellants are attempting to do, in effect, is to engraft into the contract another restriction upon Dr. Pierce's use of his property. We do not think that a restriction upon the use of the basement may be implied from the testimony offered, and the fact that many of the group understood there to be such a restriction is not sufficient. While a restrictive covenant may arise by implication from the language used in an instrument or from the conduct of the parties, the implication must be plain and unmistakeable, or necessary. Schaeffer v. Gatling, 243 Miss. 155, 137 So.2d 819 (1962); 20 Am.Jur.2d Covenants § 173.
Appellants also urge that the trial court erred in dividing the costs equally between the parties. Section 1583, Mississippi Code 1942, Annotated (1956), vests the chancellor broad powers relative to taxing costs and we are unable to say in this instance that he abused his discretion. We have held that it must be an exceptional case for this Court to reverse a decree for error in the taxing of costs. Schwander v. Rubel, 221 Miss. 875, 75 So.2d 45 (1954).
The principal assignment on cross appeal is that the chancellor erred in refusing to partition the common property and set aside to Dr. Pierce his claimed share. The chancellor held that ownership of this property was not that of tenancy in common, rather the group as a whole owned it for their common use, and thus, that it did not come within the purview of the partition statute. It is apparent from an examination of the covenants of the deed and contract that the chancellor reached the right conclusion. Although the statute gives joint owners the right to have their property partitioned, the right is not one that cannot be restricted or limited for a reasonable length of time by contract, will, or deed. It is a well settled general rule that the right of partition may be limited by the provisions of the deed under which the parties claim and that joint owners may contract that their property will not be partitioned for a reasonable length of time. Both the deed and contract in this case clearly show a purpose to retain the service areas for the common use and benefit of the owners of the lots for the period of time designated in the deed. 68 C.J.S. Partition §§ 43 e and 44.
We are also of the opinion that the chancellor did not err in refusing to hold that the contract was void because the parties had ignored or disregarded its terms. The proof is not sufficient to sustain this contention. Neither was it error to enjoin Dr. Pierce from constructing another building until he submits plans and specifications for approval by the executive committee in accordance with the contract. The chancellor was careful to retain jurisdiction of this feature of the case so that Dr. Pierce would have recourse should the committee refuse to approve the plans and specifications when submitted. This the chancellor had the power to do, and in view of the dissension among the members of the group, it was probably the wise thing to do. In any event, there was no error in this regard.
Having carefully considered the lengthy record, assignments of error and briefs in this case, we are of the opinion that the evidence supports the chancellor's findings of fact and that the decree is in keeping with the law. We therefore affirm on direct and cross appeal.
Affirmed.
JONES, PATTERSON, SMITH and ROBERTSON, JJ., concur.