HENMI APARTMENTS, INC. and JAMES T. HENMI, Plaintiffs-Appellees, *v.* STEPHEN SAWYER and HARRIET BOUSLOG SAWYER, Defendants-Appellants

(CIVIL NO. 63150)

AND

STEPHEN SAWYER and HARRIET BOUSLOG SAWYER, Plaintiffs-Appellants, *v.* JAMES T. HENMI, TSURUE HENMI, HENMI APARTMENTS, INC., Defendants-Appellees, and STATE OF HAWAII, CITY AND COUNTY OF HONOLULU, Defendants

(CIVIL NO. 63137)

NO. 8243

DECEMBER 13, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

## OPINION OF THE COURT BY BURNS, C. J.

On October 16, 1980, appellants Stephen and Harriet Sawyer ("Sawyers") sued appellees James and Tsurue Henmi ("Henmis"), Henmi Apartments, Inc.,[1] the State of Hawaii, and the City and County of Honolulu, seeking partition and judicial sale under Chapter 668, HRS (1976) of certain parcels of land owned in common by the Sawyers and the Henmis. The State of Hawaii and the City and County of Honolulu subsequently filed disclaimers of interest.

James Henmi and Henmi Apartments, Inc., in turn filed an action for declaratory relief and for injunction against the Sawyers, claiming a pedestrian and utility easement over the parcels in question and asking that the Sawyers be enjoined from interfering with their use thereof.

After consolidation and a bench trial, the lower court ruled in favor of the Henmis. The Sawyers appeal. We affirm the existence of the easement and reverse the denial of the request for partition.

On March 17, 1924, Hugo Knut Hope ("Hope") filed a subdivision map with the Land Court, subdividing a parcel of land in the Punchbowl area of Honolulu into Lots 1 through 6, inclusive.

MAP NO. 1

---

[1] Henmi Apartments, Inc., a Hawaii corporation, is the lessee of the Henmis.

On July 23, 1924, Hope resubdivided Lot 3 into Lots 3-A, 3-B, and 3-C.

MAP NO. 2

Lot 3-B is 78 feet in length and Lot 5 is 100.4 feet in length. Both lots are 7.3 feet wide.

On October 30, 1924, Hope conveyed Lot 2 to Herman Bahr together with one-third interest in Lot 3-B and one-fifth interest in Lot 5. By mesne conveyances, Lot 2 and said fractional interests in Lots 3-B and 5 have devolved to the Henmis, as trustees.

On April 15, 1961, the Sawyers purchased Lots 1, 3-A, 3-C, four-fifths interest in Lot 5, and two-thirds interest in Lot 3-B. They bought Lot 4 on December 18, 1961 and Lot 6 on November 29, 1962.

When James Henmi's parents and predecessors-in-title, Heima and Yoneko Henmi, purchased Lot 2 and the fractional interests in Lots 3-B and 5, sewer and water lines ran between Lot 2 and Spencer Street under Lots 3-B and 5. There was also a concrete walkway on Lots 3-B, 5, and 2 for passage between Spencer Street and the south boundary of Lot 2.

In 1967 and 1968, James Henmi demolished Lot 2's residential structure, replaced it with an apartment building, and replaced the existing sewer and water lines under Lots 3-B and 5 with larger-sized lines. The concrete surface of the walkway was removed and the

walkway was blocked by large ẽxposed pipes. In 1980 the Henmis retained a contractor to do the work necessary to make Lots 3-B and 5 accessible as a walkway to occupants of Lot 2 but the work was not completed because the Sawyers protested.

Since 1934, the Hawaii State Tax Department has designated Lots 3-B and 5 as rights-of-way and have nominally valued them at one dollar for real property tax purposes.

The court below found that Hope and his grantees had created an easement over Lots 3-B and 5 for utility and pedestrian purposes in favor of Lot 2 and the other dominant lots. It further found that the Henmis did not abandon their right-of-way and always intended to repair the walkway. However, it held that Lots 3-B and 5 are not subject to partition.

On appeal, the Sawyers argue:

1) That the trial court erred in declaring that Lots 3-B and 5 are subject to an implied easement for right-of-way and for sewer and water line purposes, and

2) That the trial court erred in ruling that Lots 3-B and 5 are not subject to partition.

I.

We recognize that HRS § 501-82 (1976)[2] evidences a policy against unregistered encumbrances upon Land Court registered

---

[2] Section 501-82, HRS, provides:

§ 501-82 *Tenure of holder certificate of title.* Every applicant receiving a certificate of title in pursuance of a decree of registration and every subsequent purchaser of registered land who takes a certificate of title for value and in good faith, hold the same free from all encumbrances except those noted on the certificate in the order of priority of recoradation, and any of the following encumbrances which may be subsisting, namely:

(1) Liens, claims, or rights arising or existing under the laws or Constitution of the United States, which the statutes of this State cannot require to appear of record in the registry; provided, that notices of liens for internal revenue taxes payable to the United States, and certificates affecting such liens, shall be deemed to fall within this subsection only if the same are recorded in the bureau of conveyances as provided by chapter 505.

(2) Unpaid real property taxes assessed against the land and improvements covered by the certificate of title, with interest, penalties, and other additions to the tax, which, unless a notice is filed and registered as provided by

land. However, we disagree with the Sawyers' contention that such encumbrances may never arise. It is well-settled in this jurisdiction that a valid unregistered easement on Land Court registered land may be implied under certain facts and circumstances. *In Re Yamaguchi*, 39 Haw. 608 (1952); *Paterson v. Rush*, 34 Haw. 881 (1938). Whether an implied easement exists depends on the intent of the parties as shown by all the facts and circumstances under which the conveyance was made. 25 Am.Jur. 2d *Easements and Licenses* § 24 (1966).

The appellate standard of review of the trial court's finding of intent is the clearly erroneous standard. Rule 52(a), HRCP. Findings of fact are clearly erroneous unless supported by substantial evidence in the record. *Shoemaker v. Takai*, 57 Haw. 599, 561 P.2d 1286 (1977). Substantial evidence is credible evidence which is of suffici-

---

section 246-55, shall be for the period of three years from and after the date on which the lien attached, and if proceedings for the enforcement or foreclosure of the tax lien are brought within the period, until the termination of the proceedings or the completion of the tax sale.

(3) Any public highway, or any private way laid out under the provisions of law, when the certificate of title does not state that the certificate of title does not state that the boundary of such way has been determined.

(4) Any lease, coupled with occupancy, for a term not exceeding one year; provided, that the priority of the unrecorded lease shall attach only at the date of the commencement of the unrecorded lease and expire one year from the date or sooner if so expressed.

(5) Any liability to assessments for betterments, or statutory liability which may attach to land as a lien prior to or independent of, the recording or registering of any paper of the possibility of a lien for labor or material furnished in the improvement of the land; provided, that the priority of any such liability and the lien therefor (other than for labor and material furnished in the improvement of the land which shall be governed by section 507-43) shall cease and terminate three years after the liability first accrues unless notice thereof, signed by the officer charged with collection of such assessments or liability, setting forth the amount claimed, the date of accrual, and the land affected, is registered and noted on the certificate of title within such three year period; provided, further, that if there are easements or other rights, appurtenant to a parcel of registered land which for any reason have failed to be registered, such easements or rights shall remain so appurtenant notwithstanding such failure, and shall be held to pass with the land until cut off or extinguished by the registration of the servient estate, or in any other manner.

(6) The possibility of reversal or vacation of the decree or registration upon appeal.

ent quantity and probative value to justify a reasonable man in reaching a conclusion. *In Re Charley's Tour & Transp. Inc.*, 55 Haw. 463, 522 P.2d 1272 (1974). The credibility of the testimony is for the trial court to determine. *Shinn v. Yee, Ltd.*, 57 Haw. 215, 553 P.2d 733 (1976). In a bench trial, even though the findings are supported by "substantial evidence," they may be set aside on appeal if the appellate court decides that they are against the clear weight of the evidence or otherwise reaches a definite and firm conviction that a mistake has been made. *DeFries v. Association of Owners*, 57 Haw. 296, 555 P.2d 855 (1976); *State v. Patterson*, 58 Haw. 462, 571 P.2d 745 (1977); *Hawaii Builders Supply v. Kaneta*, 42 Haw. 111 (1957); 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* § 2585 (1971); 2 WRIGHT, FEDERAL PRACTICE AND PROCEDURE: *Criminal* § 374 (1969). *See Yorita v. Okumoto*, 3 Haw. App. 148, 643 P.2d 820 (1982); n.11 of *Clarkin v. Reimann*, 2 Haw. App. 618, 638 P.2d 857 (1981).

After examining the record, we conclude that the trial court's finding of intent in this case is not clearly erroneous, and we have no definite and firm conviction that a mistake has been made.

The subdivision maps filed in the Land Court in 1924 by Hope are substantial evidence of his intent to burden Lots 3-B and 5 with an easement in favor of Lot 2.

[W]here the owner of a tract lays out streets upon a map not for purposes of description or location, but for the purposes of establishing private streets and sells the subdivided lots with reference to such map, he thereby creates by implication a private easement in favor of lot owners upon the streets thus declared to be for their use.

*Paterson v. Rush, supra*, at 889.

Hope subdivided his land and sold the subdivided lots with reference to the subdivision maps. Although he did not specify the intended use of Lots 3-B and 5, the clear implication is that they were intended as rights-of-way for the adjoining lots. The size and shape of Lots 3-B and 5 preclude other possible uses. When Hope conveyed "dominant" Lots 2, 3-A, and 3-C, he also conveyed undivided fractional interests in "servient" Lots 3-B and 5. The fact that these fractional interests were conveyed with Lot 2 to Bahr and, ultimately, the Henmis, distinguishes the present case from the cases cited by the Sawyers. In *Honolulu Memorial Park, Inc. v. City and County of*

*Honolulu,* 50 Haw. 189, 436 P.2d 207 (1967); *Moore v. Henricksen,* 282 Minn. 509, 165 N.W.2d 209 (1968); and *Goldstein v. Beal,* 317 Mass. 750, 59 N.E.2d 712 (1945), the defendants claimed easements over lands owned by the plaintiffs. In the present case, the Henmis claim an easement over land in which their tenancy-in-common is unquestioned.

Since there is nothing to show that the parties intended them to be mere personal rights and since they are useful adjuncts of the dominant lots, the easements for pedestrian and utility purposes are appurtenant to the dominant lots. *Tsunoda v. Young Sun Kow,* 23 Haw. 660 (1917); *Allingham v. Nelson,* 6 Kan. App.2d 294, 627 P.2d 1179 (1981); 25 Am. Jur.2d *Easements and Licenses* § 13 (1966). These appurtenant easements ran with the dominant lots, and the conveyance of the latter included the former even though not referred to in the instrument of transfer. *Peck v. Bailey,* 8 Haw. 658 (1867); 25 Am. Jur.2d. *Easements and Licenses* § 95 (1966).

The Sawyers also claim that the Henmis have abandoned the pedestrian aspects of the easement due to disuse. The party alleging abandonment must prove it "by clear and unequivocal evidence of decisive and conclusive acts." *Goo v. Young,* 36 Haw. 132, 149 (1942). A mere showing of disuse does not satisfy the burden. *Fleming v. Napili Kai,* 50 Haw. 66, 430 P.2d 316 (1967); *Cooper v. Sawyer,* 48 Haw. 394, 405 P.2d 394 (1965). As a question of fact, the "clearly erroneous" standard of review again applies. On the record before us, we conclude that the trial court did not clearly err in finding non-abandonment.

## II.

While we agree with the Henmis that Lots 3-B and 5 are subject to an implied appurtenant easement in favor of Lot 2, it does not follow that Lots 3-B and 5 are immune from partition. Partition of jointly owned real estate is governed by HRS § 668-1 (1976) which provides that any person who holds property as a tenant-in-common with another person may seek partition.[3]

---

[3] Section 668-1, HRS, provides:

§ 668-1 *Actions for partition.* When two or more persons hold or are in possession of real property as joint tenants or as tenants in common, in which one

In jurisdictions where partition is provided for by statute, the general rule is:

> Where a case is fairly brought within the law authorizing a partition, it is generally conceded that the right to partition is imperative and absolutely binding upon courts having jurisdiction of such proceeding, and they are not clothed with such discretion that, under a given state of facts, they may grant the relief or refuse it, and yet commit no error.

59 Am. Jur.2d *Partition* § 30 (1971). *Brown v. Holmes,* 19 Haw. 268 (1909). This right of partition is not overcome by the existence of an easement upon the property owned in common. *Witt v. Reavis,* 284 Or. 503. 587 P.2d 1005, 1008 (1978); *Townes v. Cox,* 162 Tenn. 624, 39 S.W.2d 749 (1931). Upon partition, the purchaser of the property takes it subject to existing easements. *Blum v. Weston,* 102 Cal. 362, 36 P. 778 (1894); 59 Am. Jur.2d *Partition* § 191 (1971).

We recognize that notwithstanding the non-discretionary nature of a partition action, the right to partition may be waived by express or implied contract. *American Medical International Inc. v. Feller,* 131 Cal. Rptr. 270 (1976); 68 C.J.S. *Partition* § 44 (1950). In the present case, the court below found that an implied contractual waiver prevented partition by Sawyer:

> 17. . . . It was the intent and understanding of Hugo Hope and all persons purchasing lots abutting Lots 3-B and 5 that the ownership of Lots 3-B and 5 was not severable from ownership in favor of the dominant lots, these being Lots 2, 3-A, and 3-C. [Record at 123.]

and concluded:

> 2. Lots 3-B and 5 are not subject to partition. Equity will be best served by keeping Lots 3-B and 5 as an easement for walkway and utility purposes, therefore, said lots are not subject to a partition. [Record at 124.]

---

or more of them have an estate in fee, or a life estate in possession, any one or more of such persons may bring an action in the circuit court of the circuit in which the property or some part thereof is situated, for a partition of the property, according to the respective rights of the parties interested therein, and for a sale of the same or a part thereof if it appears that a partition cannot be made without great prejudice to the owners. The several circuit courts shall have power, in any action for partition, to proceed according to the usual practice of courts of equity in cases of partition, and according to this chapter in enlargement thereof.

Although the Sawyers appealed conclusion of law 2, they failed to appeal finding of fact 17. However, we may address this issue *sua sponte*. *Nihoa v. Chow*, 57 Haw. 172, 552 P.2d 77 (1976). The issue is whether finding of fact 17 is clearly erroneous. We hold that it is.

The only evidence in support of the trial court's finding of intent consists of the maps submitted to the Land Court by Hope in 1924. While these maps show an intent by Hope and his grantees to create an easement, they do not show that Hope and his grantees intended the fractional interests to be non-partible. Accordingly, such evidence is insufficient to support the trial court's finding.

Moreover, even if an agreement between Hope and his grantees not to partition is implied in fact, it does not affect subsequent purchasers unless the original parties expressly or impliedly intended that the agreement run with the land and the subsequent purchaser against whom the burden is to be enforced had notice. Note, *Equitable and Contractual Defenses to Partition*, 18 STAN. L. REV. 1428, 1436 (1966). In the present case, there is no such evidence.

The cases cited by Henmi, *Wiener v. Pierce*, 203 So.2d 598 (Miss. 1967); *Carter v. Weowna Beach Community Corporation*, 71 Wash.2d 498, 429 P.2d 201 (1967); *American Medical International, Inc. v. Feller*, 59 Cal. App.3d 1008, 131 Cal. Rptr. 270 (1976), are inapposite. In each of those cases, an express contract for a specific use of the land in question would have been frustrated if partition was allowed. This is not so in the present case. Lot 2 will continue to enjoy the easement notwithstanding partition. Furthermore, none of those cases address the successor-in-interest situation.

Accordingly, we affirm the finding of an easement in favor of Lot 2 for pedestrian right-of-way and for sewer and water purposes across Lots 3-B and 5 but reverse the denial of partition by judicial sale of Lots 3-B and 5, subject to the easement. This case is remanded for further proceedings consistent with this opinion.

*Thomas E. Cook (George W. Brandt* with him on the briefs; *Lyons, Hagerman & Brandt* of counsel) for appellants.

*Ton Seek Pai (Okumura, Takushi, Funaki & Wee* of counsel) for appellees.