**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000368
14-MAR-2025
07:54 AM
Dkt. 103 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---oOo---

PAMELA ROBINSON McDOWELL; DAVID McDOWELL;
DAVID A. McDOWELL AND PAMELA ROBINSON McDOWELL,
Trustees of the Dave and Pam McDowell Revocable
Trust dated December 14, 2005,
Plaintiffs-Appellees,
v.
PHILIP S. KEAT and PAKALA LLC,
Defendants-Appellants
and
A. JOHN KEAT and DAWN KEAT,
Defendants-Appellees,
and
JOHN DOES 1-5; JANE DOES 1-5; DOE CORPORATIONS 1-5;
DOE PARTNERSHIPS 1-5; DOE ASSOCIATIONS 1-5;
DOE GOVERNMENTAL UNITS 1-5, DOE ENTITIES 11-5,
Defendants


NO. CAAP-21-0000368


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5CC19-1-000003)


MARCH 14, 2025


HIRAOKA, PRESIDING JUDGE, AND WADSWORTH AND McCULLEN, JJ.

OPINION OF THE COURT BY WADSWORTH, J.

This appeal stems from a lawsuit to establish a beach access easement, brought by Plaintiffs-Appellees Pamela Robinson McDowell (**Pamela**) and David McDowell (**David**) (together, **the**

**McDowells**), individually and as Trustees of the Dave and Pam McDowell Revocable Trust dated December 14, 2005, against Defendants-Appellants Philip S. Keat (**Philip**) and Pakala, LLC (**Pakala**) and Defendants-Appellees A. John Keat (**John**) and Dawn Keat (collectively, **the Keats**).  Philip and Pakala appeal from the Amended Final Judgment (**Amended Judgment**) entered on May 26, 2022, in the Circuit Court of the Fifth Circuit (**Circuit Court**).[1/] As relevant to this appeal, following a jury trial, judgment was entered on the McDowells' Second Amended Complaint as follows: on Count I (Easement by Implication – Prior Existing Quasi-Easement) and Count II (Easement by Estoppel) in favor of the McDowells and against Pakala; on Count IV (Assault) in favor of David and against Philip; on Count V (Battery) in favor of David and against Philip; on Count VI (Nuisance) in favor of the McDowells and against Philip; and on Count VII (Intentional Infliction of Emotional Distress) in favor of the McDowells and against Philip.

On appeal, Philip and Pakala contend that the Circuit Court erred in:  (1) failing to rule as a matter of law that the McDowells do not have an implied beach access easement or a beach access easement by estoppel across Pakala's property; (2) allowing the McDowells' legal expert to testify about the legal requirements for an implied easement; (3) instructing the jury that the McDowells were required to prove their implied easement and easement by estoppel claims by a preponderance of the evidence, rather than by clear and convincing evidence; (4) entering a judgment "delineating an easement route that is different than any pre-severance historical route"; and (5) failing to rule as a matter of law that the McDowells did not have a beach access easement, and to so instruct the jury regarding its consideration of Philip's use-of-force-to-defend-

---

[1/]     The Honorable Randal G.B. Valenciano presided.  The notice of appeal, filed on June 15, 2021, appealed from the "Final Judgment" entered on June 7, 2021.  On temporary remand from this court, the Circuit Court entered the Amended Judgment, which is final and appealable pursuant to Hawaiʻi Rules of Civil Procedure Rule 58.  We construe Philip and Pakala's appeal as an appeal from the Amended Judgment.  See Hawaiʻi Rules of Appellate Procedure Rule 4(a)(2).

property defense.[2]

We hold that the Circuit Court did not err in denying the Keats' motion for judgment as a matter of law (**JMOL**) on the McDowells' implied easement claim, as the evidence at trial established, among other things, that the dominant and servient properties shared a prior unity of ownership, and the parties intended to create a beach access easement in favor of the dominant parcel when the properties were severed. The Circuit Court erred, however, in denying the Keats' JMOL motion on the McDowells' easement by estoppel claim, as the McDowells failed to present evidence of a representation or concealment of material facts relating to beach access.

As to the testimony of the McDowells' legal expert, we conclude that Philip and Pakala failed to show that any error in admitting it resulted in substantial prejudice to their rights. We further hold that the Circuit Court did not err in: (1) instructing the jury that the McDowells were required to prove their implied easement claim by a preponderance of the evidence; (2) describing an easement route that differed from a pre-severance historical route; and (3) not instructing the jury, for purposes of Philip's use-of-force-to-defend-property defense, that the McDowells did not have a beach access easement.

Accordingly, we affirm in part and vacate in part the Amended Judgment.

## I.  Background

The following brief background is drawn primarily from the evidence presented at trial.

The McDowells, as trustees of their trust, and Pakala own adjacent parcels of land on Kauaʻi. In 1968, siblings Jean R. Weir (**Jean**), Ruth R. LeFiell (**Ruth**), Marion R. Keat (**Marion**), and Russell S. Robinson (**Russell**) acquired, as tenants in common in equal shares, a 34-acre parcel in Pākalā, Kauaʻi formerly owned by their parents (**the Pākalā tract**). In a 1973 agreement,

---

[2]    Philip and Pakala's points of error have been reordered and restated in part for purposes of clarity.

the siblings subdivided the Pākalā tract into four lots, with Jean owning Lot A, Ruth owning Lot B, Russell owning Lot C, and Marion owning Lot D.  Because the family home was on Lot D and was the only structure on the Pākalā tract, the agreement required Marion to pay each of her siblings one-fourth of the home's appraised value.[3/]  Lots A, B, and D have beach access/frontage, while Lot C does not.

At the time of trial, Russell's daughter Pamela and her husband David, as trustees of their trust, owned a 5-acre part of Lot C, identified as C-1.  They built a house there in 2008. Philip and John, who are Marion's sons and Pamela's first cousins, inherited Lot D through Marion's trust.  In 2010, Philip and John conveyed Lot D to Pakala, which they formed and own.

Pamela grew up on Kauaʻi and her family lived on a property that was a "walkable" distance from the Pākalā tract, on the other side of Kamualiʻi highway.  After Pamela's parents divorced in 1963, when she was ten years old, she left Kauaʻi. During her childhood, she and her family would take a path to the beach through the Pākalā tract that went down a driveway that began at Kaumualiʻi highway and led to her grandparents' house, then after the driveway ended, through a gate in a rock wall that fronted the ocean.  Pamela continued to use this beach access path when she visited her father after the divorce, and through her teens, twenties, and adult life.

The beach access path used by Pamela and her family ran down the paved driveway on Lot D and through a gate in the rock wall near the intersection of Lots D and B.  The gate through the rock wall on Lot D was the only gate to the beach on the Pākalā tract.  The gate and a portion of the rock wall were later moved by Marion in 1998, because they encroached on Lot B.

In 2003, Pamela became aware that Philip believed she did not have the right to use the beach access path across his property.  In December 2006, Pamela's husband David wrote to

---

[3/]    The 1973 agreement also granted Ruth, Russell, Jean and "the members of their immediate families and their employees" a right of access to the driveway on Lot D, "for drive-way purposes," which was "personal and shall not inure to the successors or assigns of the co-parceners."

Philip to ask that Philip clarify his position on beach access, noting Pamela had "beach access through your mother's property since childhood[,]" and "[h]er father had beach access through that property as well . . . ."  In January 2007, Philip responded by denying David and Pamela had a right to beach access through his property.

In September 2018, the McDowells walked to the beach from their home to watch the sunset, and then returned on the beach access path that Pamela had previously used, when Philip stopped them.  According to Pamela, Philip "came running from his house and started screaming at us to get -- with profanities -- off his property, to turn around, go back through public access that is way down the beach . . . ."  Pamela and David claim Philip physically attacked David, and as a result David fell to the ground and was injured.  This litigation ensued.

## II.  Standards of Review

### A.  Judgment as a Matter of Law

> A trial court's ruling on a motion for judgment as a matter of law is reviewed *de novo*.  "A motion for judgment as a matter of law may be granted only when after disregarding conflicting evidence, giving to the non-moving party's evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in the non-moving party's favor, it can be said that there is no evidence to support a jury verdict in his or her favor."

Ray v. Kapiolani Med. Specialists, 125 Hawaiʻi 253, 261, 259 P.3d 569, 577 (2011) (citations and brackets omitted) (citing and quoting Miyamoto v. Lum, 104 Hawaiʻi 1, 6-7, 84 P.3d 509, 514-15 (2004)).

### B.  Jury Instructions

> We review jury instructions to determine whether, considered as a whole, the instructions were "prejudicially insufficient, erroneous, inconsistent, or misleading."  Nelson v. Univ. of Haw., 97 Hawaiʻi 376, 386, 38 P.3d 95, 105 (2001) (internal quotation marks and citations omitted).  Invalid or insufficient instructions are presumptively prejudicial and are grounds for vacating the verdict unless it affirmatively appears from the record as a whole that the error was harmless.  Id.

Medeiros v. Choy, 142 Hawaiʻi 233, 239, 418 P.3d 574, 580 (2018).

## C.   Admission of Expert Testimony

"Generally, the decision whether to admit expert testimony rests in the discretion of the trial court.  To the extent that the trial court's decision is dependent upon interpretation of court rules, such interpretation is a question of law, which the appellate court reviews de novo." State v. Engelby, 147 Hawaiʻi 222, 231, 465 P.3d 669, 678 (2020) (brackets omitted) (quoting State v. McDonnell, 141 Hawaiʻi 280, 289, 409 P.3d 684, 693 (2017)).

## III.  Discussion

### A.  Claims for Implied Easement and Easement by Estoppel

Philip and Pakala contend that the Circuit Court erred in denying the Keats' motions for JMOL by failing to rule that the McDowells do not have (a) an implied beach access easement across Pakala's Lot D and (b) a beach access easement by estoppel across Pakala's Lot D.[4/]  We address each contention in turn, below.

#### 1.   Implied Easement

"Hawaiʻi courts have long recognized the principle that easements can be implied, depending on the circumstances of the case." Malulani Grp., Ltd. v. Kaupo Ranch, Ltd. (Malulani Grp. I), 133 Hawaiʻi 425, 428, 329 P.3d 330, 333 (App. 2014) (citing multiple cases).  To imply an easement, the dominant and servient properties must first have shared a prior "unity of ownership." Id. (italics omitted); see also Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawaiʻi 97, 105-06, 58 P.3d 608, 616-17 (2002) (quoting Neary v. Martin, 57 Haw. 577, 580, 561 P.2d 1281, 1283 (1977), which in turn quotes 3 Powell on Real

---

[4/]     To the extent Philip and Pakala contend that the Circuit Court erred in denying the Keats' March 20, 2020 motion for partial summary judgment, they have not established that the denial was based on a question of law, as opposed to the presence of factual issues for the jury.  See Bhakta v. Cnty. of Maui, 109 Hawaiʻi 198, 209, 124 P.3d 943, 954 (2005) (following a trial on the merits, "an order denying [a] motion [for summary judgment can]not be appealed if denial was based on the presence of factual questions for the jury, but [can] be appealed if based on questions of law." (quoting Larsen v. Pacesetter Sys., Inc., 74 Haw. 1, 17-18, 837 P.2d 1273, 1282-83 (1992))).

Property § 411 to explain the theory underlying an implied easement). "If there was prior unity of ownership of the properties, Hawaiʻi courts then focus on the intent of the parties at the time the properties were severed to determine if an implied easement exists." Malulani Grp. I, 133 Hawaiʻi at 429, 329 P.3d at 334; see The Malulani Grp., Ltd. v. Kaupo Ranch, Ltd. (Malulani Grp. II), No. SCAP-16-0000508, 2018 WL 2306496, at *1 n.1 (Haw. May 21, 2018) (SDO) (citing Jon W. Bruce & James W. Ely, Jr., The Law of Easements and Licenses in Land §§ 4.6, 4.11-12, 4.16 (2018), regarding the elements for easements implied by necessity and by prior use).

To determine the parties' intent, we look at "all the facts and circumstances under which the conveyance was made." Malulani Grp. I, 133 Hawaiʻi at 429, 329 P.3d at 334 (quoting Henmi Apartments, Inc. v. Sawyer, 3 Haw. App. 555, 559, 655 P.2d 881, 885 (1982)). Three non-exclusive factors guide us: the parties may have intended "for a previously existing quasi-easement to ripen into an implied easement" if the quasi-easement was: "(1) apparent; (2) permanent; and (3) either (a) 'important for the enjoyment of the conveyed quasi-dominant parcel,' or (b) 'strictly necessary' for the enjoyment of the dominant parcel." Id. (quoting AOAO Wailea Elua, 100 Hawaiʻi at 106 n.8, 58 P.3d at 617 n.8); Aliʻi Turf Co. v. Ass'n of Unit Owners of Poamoho Camp, No. CAAP-21-0000022, 2024 WL 5166747, at *1 (Haw. App. Dec. 19, 2024) (SDO).

It is undisputed that from 1968 to 1973, Russell, Marion, Ruth, and Jean owned the Pākalā tract as tenants in common, satisfying the unity of ownership requirement.

Pamela and her sister Bharbara Foxcroft (**Bharbara**) testified that their family regularly used the beach access path along the driveway and through the rock wall and gate pre-severance, because that route was the only entrance to the beach from their grandparents' property. Thus, there was evidence the beach access route was "apparent."

The "permanency" factor has alternatively been described as "continuous," because "[c]ontinuity of use reveals the common owner's intent that the quasi-easement was a permanent

7

servitude meant to survive severance."  Jon W. Bruce, James W. Ely, Jr. & Edward T. Brading, The Law of Easements and Licenses in Land § 4:20 (1st ed. 2025).  Pamela and Bharbara's testimony of regular pre-severance use of the beach access path provided evidence of an intent that the access survive severance.

In addition to using the beach for recreational purposes, Pamela testified that her father Russell used the beach to break horses, and that the family business, Gay & Robinson, often made use of Pākalā beach to ferry people and livestock to and from Niʻihau.  Russell worked for Gay & Robinson, and did a lot of the administrative work.  Pamela stated that although Russell and his sisters intended to divide the Pākalā tract equally, Russell received the only parcel without beach frontage.  She stated that as a result, "[i]t was his understanding . . . [h]e would still have beach access."  Thus, there was sufficient evidence for the jury to determine that beach access was "important for the enjoyment of the conveyed quasi-dominant parcel," and that the parties intended an implied easement benefitting Lot C.

Because judgment as a matter of law is only appropriate when "it can be said that there is no evidence to support a jury verdict," the Circuit Court did not err in denying the Keats' JMOL motion on the McDowells' implied easement claim.[5]  Ray, 125 Hawaiʻi at 261, 259 P.3d at 577 (quoting Miyamoto, 104 Hawaiʻi at 7, 84 P.3d at 515).

### 2.    Easement By Estoppel

The Circuit Court erred, however, in denying the Keats' motion for JMOL on the McDowells' easement by estoppel claim.  In moving for JMOL after the McDowells completed their case-in-chief, the Keats argued that the McDowells failed to present

---

[5]    Philip and Pakala cite no authority for their argument that "since the land that became Lot C did not use the beach access before severance, it cannot be implied that Lot C can use the beach access after severance." "Land" cannot make use of a beach access easement, but landowners can.  The relevant question is whether, at the time of the 1973 severance of the parcels, Russell and his sisters intended that his beach access continue as the owner of Lot C.  Pamela established through her testimony that her father and family made regular pre-severance use of the beach access path.

evidence of any "promise or assurance" causing detrimental reliance, a necessary element of estoppel. In response, the McDowells argued estoppel by conduct, claiming that historically they were never prevented by Marion from using the beach path, and they relied on that history when they built their house. The Keats correctly argued, however, that the McDowells' reliance on Marion's conduct could not have been reasonable when they built their house in 2008, because in 2003 Philip had already notified Pamela he believed they did not have a right to cross his property for beach access. In closing arguments, and now on appeal, the McDowells argue that "Russell . . ., in agreeing to take the back lot in 1973, did so in reliance on the conduct of his sister in asserting an understanding that Russell would continue to have beach access even after the property was divided . . . ."

To establish estoppel by conduct, "there must have been a representation or concealment of material facts, known by the party to exist, and with the intention of inducing a party, ignorant of the facts, to act upon the representations." Reliable Collection Agency, Ltd. v. Aquarius Indus., Inc., 56 Haw. 251, 255, 535 P.2d 129, 131 (1975) (quoting Broida v. Hayashi, 51 Haw. 493, 499, 464 P.2d 285, 289 (1970) (quoting Molokai Ranch, Ltd. v. Morris, 36 Haw. 219, 233 (1942))). Similarly, Professors Bruce, Ely, and Brading describe the elements of an easement by estoppel as "(1) misrepresentation or fraudulent failure to speak and (2) reasonable detrimental reliance." Bruce et al., supra, § 6.1.

Here, there was no evidence presented at trial that Marion made any representation to Russell regarding beach access or a related easement or that she concealed material facts from Russell when Lot C was conveyed. Nor was there any evidence that Marion or Philip concealed material facts regarding a beach access easement from Pamela. Accordingly, after "indulging every legitimate inference which may be drawn from the evidence in the non-moving party's favor," the Circuit Court erred in denying the Keats' motion for JMOL on the easement by estoppel claim. Ray, 125 Hawai‘i at 261, 259 P.3d at 577.

9

## B.  Legal Expert Witness

Philip and Pakala contend that the Circuit Court erred by allowing the McDowells' legal expert witness, attorney Raymond Iwamoto (**Iwamoto**), to testify on the requirements for an implied easement.

Prior to trial, the Keats filed a motion in limine to exclude Iwamoto's testimony, which the Circuit Court granted in part and denied in part, ruling that Iwamoto "can testify about legal concepts, theories, and terms, but cannot testify about the facts of the case or apply the facts of the case to legal theories."[6/]  At trial, Iwamoto testified on the legal definition of an easement, the legal requirements for an implied easement, and the law on terminating or canceling an implied easement.

In Create 21 Chuo, Inc. v. Southwest Slopes, Inc., 81 Hawaiʻi 512, 522 n.4, 918 P.2d 1168, 1178 n.4 (App. 1996), this court stated that "there is a strong consensus among the jurisdictions, amounting to a general rule, that witnesses may not give an opinion on a question of domestic law or on matters which involve questions of law."  Relatedly, in Lahaina Fashions, Inc. v. Bank of Hawaiʻi, 131 Hawaiʻi 437, 319 P.3d 356 (2014), the Hawaiʻi Supreme Court ruled that the testimony of a bank executive, who was also an attorney, that the bank and other respondents owed a fiduciary duty to the petitioner, amounted to a legal conclusion that could not raise a fact issue to defeat a motion for JMOL.  Id. at 454, 319 P.3d at 373.  In so ruling, the court quoted Create 21 for the rule that "[e]xpert or non-expert opinion that amounts to a conclusion of law cannot be properly received in evidence . . . ."  Id. (quoting Create 21, 81 Hawaiʻi at 522, 918 P.2d at 1178).

Nevertheless, a trial court's error in admitting inadmissible evidence "is not a basis for reversal absent substantial resulting prejudice to the rights of a party."  In re Est. of Herbert, 90 Hawaiʻi 443, 462, 979 P.2d 39, 58 (1999) (quoting Lau v. Allied Wholesale, Inc., 82 Hawaiʻi 428, 438, 922 P.2d 1041, 1051 (1996)); see HRE Rule 103(a).  The cases finding

---

[6/]  The Keats renewed their objection to Iwamoto's testimony at trial.

10

admission of legal expert testimony to be reversible error have almost all involved jury trials where the expert applied legal principles to the facts of the case.  See, e.g., Specht v. Jensen, 853 F.2d 805, 808 (10th Cir. 1988) (concluding that admission of legal expert's testimony, which applied law to the evidence in concluding search of plaintiff's home was illegal, was not harmless); Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 508 (2d Cir. 1977) (holding it was reversible error to permit an attorney witness to interpret a contract and provide an opinion on the obligations of the parties to the contract); Summers v. A.L. Gilbert Co., 82 Cal. Rptr. 2d 162, 179 (Cal. Ct. App. 1999) (reversing the judgment, stating legal expert's opinion which expressed belief on how case should be decided "does not *aid* the jurors, it *supplants* them").

Here, even if Iwamoto's testimony regarding legal concepts and principles was improperly admitted, his testimony did not apply these principles to the facts of the case or offer an opinion on the ultimate issues.  To the extent Philip and Pakala now assert that Iwamoto's testimony was incorrect, it does not appear they raised this objection at trial or cross-examined Iwamoto on the alleged inaccuracies.  Moreover, Iwamoto was clear, when questioned by opposing counsel, that the jury instructions given by the Circuit Court would control as to the applicable law in the case.  In these circumstances, Philip and Pakala have not shown that Iwamoto's testimony resulted in substantial prejudice to their rights.  Their point of error is therefore without merit.

**C.  Burden of Proof**

Philip and Pakala contend that the Circuit Court erred in instructing the jury that the McDowells were required to prove their implied easement and easement by estoppel claims by a preponderance of the evidence, rather than by clear and convincing evidence.  They point to case authority in other jurisdictions requiring that implied easement claims be proven by clear and convincing evidence.

Hawaiʻi law does not support this argument. "In most civil proceedings, . . . the plaintiff must show by a 'preponderance of the evidence' that his or her claim is valid." Iddings v. Mee-Lee, 82 Hawaiʻi 1, 13, 919 P.2d 263, 275 (1996) (quoting Masaki v. General Motors Corp., 71 Haw. 1, 14, 780 P.2d 566, 574 (1989)). The Hawaiʻi Supreme Court and this court have not departed from this standard in discussing the requirements to establish an implied easement, including cases addressing summary judgment and bench trial rulings. See, e.g., Malulani Grp. II, 2018 WL 2306496, at *2 (affirming summary judgment in favor of plaintiff on unity of ownership issue); AOAO Wailea Elua, 100 Hawaiʻi at 100, 104-07, 58 P.3d at 611, 615-18 (affirming summary judgment in favor of plaintiff AOAO where evidence established that defendant resort company owned an implied easement for drainage purposes); Malulani Grp. I, 133 Hawaiʻi at 428-29, 329 P.3d at 333-34 (discussing the requirements for establishing an implied easement); Henmi, 3 Haw. App. at 559-61, 655 P.2d at 885-86 (affirming bench trial finding of implied easements for pedestrian and utility purposes). We decline the invitation to impose a new, elevated standard of proof for establishing implied easements.[7]

## D. Description of the Easement Route

Philip and Pakala contend that the Circuit Court erred by "delineating an easement route that is different than any pre-severance historical route and the McDowells' actual current route."

An easement may be relocated by the mutual consent of the easement holder and the owner of the servient estate. Bruce et al., supra, § 7.15. Moreover, "an agreement to relocate may be implied from the parties' actions, such as when an easement holder uses a new location established by the owner of the servient estate . . . ." Id.; see also Sweezy v. Neel, 904 A.2d 1050, 1054 (Vt. 2006) (holding that although easement location

---

[7] Because we have determined that the Circuit Court erred in denying the motion for JMOL on the McDowells' easement by estoppel claim, we need not address the standard of proof applicable to that claim.

can only be changed by consent of both easement holder and servient estate owner, "[t]his rule is tempered . . . by the accepted notion that mutual consent to a relocation 'may be implied from the acts and acquiescence of the parties'"); <u>Evich v. Kovacevich</u>, 204 P.2d 839, 844 (Wash. 1949) (holding that a change in the starting point of an easement path did not extinguish the easement, "if the general purpose for which it was originally granted and used, as for instance a way of ingress and egress, continues to be so served").

Here, Pamela testified that in 1998, the gate to the beach and part of the rock wall separating Lot D from Lot B was moved, because the new owners of Lot B believed the wall and gate encroached on their property. Pamela stated that after the relocation, she used the relocated gate to access the beach, without objection from Marion. Thus, an agreement to relocate the easement may be implied from the parties' actions. The Circuit Court did not err in describing an easement route that differed from a pre-severance historical route.

**E.   The Tort Claims Against Philip**

Philip contends that the Circuit Court erred in failing to rule as a matter of law that the McDowells did not have a beach access easement, and to so instruct the jury regarding its consideration of his use-of-force-to-defend-property defense.

As Philip makes clear, his use-of-force-to-defend-property defense was premised on the Keats' contention that the McDowells had no beach access easement and thus unlawfully entered and trespassed across Lot D. The jury determined that the McDowells proved their implied easement claim with the easement described in the Amended Judgment. In turn, we have determined that the Circuit Court did not err in denying the Keats' JMOL motion on the implied easement claim or in describing the easement. Philip's argument is therefore without merit.

Philip asserts no other argument as a basis for vacating the Amended Judgment on Counts IV through VII.

## IV.    Conclusion

For the reasons discussed above, we vacate the Amended Judgment as to Count II of the Second Amended Complaint and remand to the Circuit Court with instructions to enter judgment in favor of Pakala and against the McDowells on Count II.  We affirm the Amended Judgment in all other respects.


On the briefs:

Charles A. Price
(Koshiba & Price)
for Defendants-Appellants.

Jade Lynne Ching,
Michelle N. Comeau, and
Ryan B. Kasten
(Nakashima Ching LLC)
for Plaintiffs-Appellees.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge