KAREN H. KAHALEWAI and LEROY KAHALEWAI, Plaintiffs-Appellants, *v.* CHARLES RODRIGUES, ANTHONY N. RODRIGUES, and STATE OF HAWAII DEPARTMENT OF HAWAIIAN HOME LANDS, Defendants-Appellees

NO. 7781

(CIVIL NO. 50956)

AUGUST 4, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

This action involves the construction of the Hawaiian Homes Commission Act, 1920, as amended (hereinafter HHCA).[1] Plaintiffs Karen H. Kahalewai, nee Karen Kahinu (Karen), and Leroy Kahalewai (Leroy) (collectively plaintiffs) appeal basically from the orders dismissing defendants State of Hawaii Department of Hawaiian Home Lands (DHHL) and Anthony N. Rodrigues (Anthony) from the case, the order granting partial summary judgment in favor of defendant Charles Rodrigues (Charles),[2] and the judgment awarding them $12,616 against Charles. We affirm.

The principal issue on appeal is whether, under the HHCA provisions, a lessee has the absolute right to change the designated successor of his DHHL land lease to be effective upon the lessee's death. We answer yes.

Charles, the lessee, was the holder of Hawaiian Home Lands General Lease No. 2367 (the lease) covering, *inter alia,*

---

[1] Hawaiian Homes Commission Act, 1920; Act of July 9, 1921, ch. 42, 42 Stat. 108, *reprinted in* 1 Hawaii Revised Statutes 146 (1976) (HHCA).

[2] On November 25, 1981, counsel for defendant-appellee Charles Rodrigues (Charles) filed a suggestion of death indicating his death on September 4, 1980. There has been no substitution for the deceased Charles on appeal. However, counsel for deceased Charles filed an answering brief on February 25, 1982 and the designated successor of Charles, Anthony N. Rodrigues, is a defendant-appellee in the case.

Lot 22 in Kalamaula, Molokai. On June 2, 1967, pursuant to HHCA § 209(1), Charles designated his granddaughter Karen as successor to the lease and the Hawaiian Homes Commission (Commission)[3] approved such designation on July 28, 1967. At that time, Charles was 66 or 67 years of age. Karen claims that the designation was made pursuant to an agreement with Charles that she would look after him and maintain and care for Lot 22 and its improvements.

On May 9, 1970, plaintiffs were married. In August 1970, Leroy moved from Honolulu to join Karen and Charles on Lot 22. Plaintiffs claim that Charles induced them to demolish the old house on Lot 22 and build a new 4-bedroom home. They acquiesced because Charles assured them that Karen was the successor to the lease. As evidenced by Hawaiian Home Lands Contract of Loan No. 11328 dated April 4, 1972, Charles borrowed $18,000 from the Hawaiian Home Loan Fund for the purpose of replacing the house on Lot 22. The contract provided for interest at 7½% per annum and repayment in monthly installments of $152. Leroy's signature appears on the contract, although it is not clear in what capacity he signed the document.

The new house on Lot 22 was completed in July 1972. Plaintiffs claim that they have been repaying the loan at the rate of $152 each month.

On May 18, 1976, Charles designated Anthony as successor of the lease which was approved by the chairman of the Commission on August 3, 1976. Despite Karen's objection, the Commission ratified the chairman's approval on October 29, 1976.

On March 9, 1977, plaintiffs filed a complaint seeking to have the designation of Anthony as successor declared null and void or, in the alternative, to be awarded monetary damages.

The trial court, in its order of April 29, 1977 (April 29th Order), granted DHHL's motion to dismiss. On May 25, 1979,

---

[3] The Hawaiian Homes Commission, composed of seven members appointed by the governor with the advice and consent of the senate, heads the Department of Hawaiian Home Lands (DHHL). *See* HHCA § 202 (1976).

the court entered its order (May 25th Order) granting Anthony's motion to dismiss or, in the alternative, for summary judgment and dismissed the complaint with prejudice as to him.

On the same day, the court entered its findings of fact, conclusions of law, and order (May 25th Findings, Conclusions, and Order) granting Charles partial summary judgment concerning (1) the issue of Charles' "redesignation" of Anthony as his successor to the lease and (2) the issue that plaintiffs had no interest in the lease. The order specified that the only issue left was whether Charles perpetrated fraud or misrepresentation upon plaintiffs. After a bench trial, the court in its findings of fact, conclusions of law, and order filed on October 23, 1979 (October 23d Findings, Conclusions, and Order) (1) dismissed plaintiffs' claims based on fraud and undue influence, (2) concluded that Charles was indebted to plaintiffs on the theory of unjust enrichment, and (3) permitted plaintiffs to amend their complaint to conform to the evidence. On November 26, 1979, judgment was entered accordingly and plaintiffs' appeal followed.[4]

I.

At the outset we address the question of whether we have jurisdiction to review all of the grounds of appeal specified in plaintiffs' opening brief. In their notice of appeal, plaintiffs state that they appeal "from the final Judgment entered herein on November 26, 1979, and from each and every part thereof." Both Charles and Anthony contend that since plaintiffs failed to specify in the notice of appeal the May 25th Findings, Conclusions, and Order and the May 25th Order, we lack jurisdiction to review them. We disagree.

---

[4] Charles cross-appealed. On November 27, 1981, however, the cross-appeal was withdrawn.

No disposition of Charles' counterclaims was made in the court below. After we temporarily remanded the case, the trial court entered its *nunc pro tunc* Rule 54(b), Hawaii Rules of Civil Procedure (HRCP) (1981), certification of judgment.

Our supreme court has held that an appeal from a final judgment brings up for review all interlocutory orders which deal with the issues in the case not appealable directly as of right. *Pioneer Mill Co. v. Ward,* 34 Haw. 686 (1938). *See also City & County v. Midkiff,* 57 Haw. 273, 554 P.2d 233 (1976); *Lussier v. Mau-Van Development, Inc. I,* 4 Haw. App. 359, 667 P.2d 804 (1983); *Munoz v. Small Business Administration,* 644 F.2d 1361 (9th Cir. 1981).

II.

Hawaiian Homes Commission Act §§ 208(5) and 209(1) are dispositive of the appeal from the April 29th Order, May 25th Order, and the May 25th Findings, Conclusions, and Order. HHCA § 208(5) (1976) states:

The lessee *shall not* in any manner transfer to, or mortgage, pledge, or otherwise hold for the benefit of, any person or group of persons or organizations of any kind, except a native Hawaiian or Hawaiians, and then *only upon the approval of the department,* or agree so to transfer, mortgage, pledge, or otherwise hold, his interest in the tract. Such interest shall not, except in pursuance of such a transfer, mortgage, or pledge to or holding for or agreement with a native Hawaiian or Hawaiians *approved of by the department,* or for any indebtedness due the department or for taxes, or for any other indebtedness the payment of which has been assured by the department, including loans from governmental agencies where such loans have been approved by the department, be subject to attachment, levy, or sale upon court process. The lessee shall not sublet his interest in the tract or improvements thereon. [Emphasis added.]

The pertinent part of HHCA § 209(1) (1976) provides:

Upon the death of the lessee, his interest in the tract or tracts and the improvements thereon, including growing crops . . . shall vest in the relatives of the decedent as provided in this paragraph. From the following relatives of the lessee, husband and wife, children, widows or widowers of the children, grandchildren, brothers and sisters, widows or widowers of the brothers and sisters, or nieces and

nephews, the lessee shall designate the person or persons to whom he directs his interest in the tract or tracts to vest upon his death. Such person or persons must be qualified to be a lessee of Hawaiian home lands . . . . Such designation must be in writing, must be specified at the time of execution of such lease *with a right in such lessee in similar manner to change such beneficiary at any time* and shall be filed with the department and approved by the department in order to be effective to vest such interests in the successor or successors so named. [Emphasis added.]

### A.

Our supreme court has reiterated that "where there is no ambiguity in the language of a statute, and the literal application of the language would not produce an absurd or unjust result, clearly inconsistent with the purposes and policies of the statute, there is no room for judicial construction and interpretation, and the statute must be given effect according to its plain and obvious meaning." *In re Palk,* 56 Haw. 492, 497, 542 P.2d 361, 364 (1975) (quoting *State v. Park,* 55 Haw. 610, 525 P.2d 586 (1974)). *See also Sherman v. Sawyer,* 63 Haw. 55, 621 P.2d 346 (1980); *In re Spencer,* 60 Haw. 497, 591 P.2d 611 (1979).

Applying the foregoing precept, we find that the language of HHCA § 209(1) is "plain and unmistakable" and we are "bound by the plain, clear and unambiguous language" therein. *In re Grayco Land Escrow, Ltd.,* 57 Haw. 436, 455, 559 P.2d 264, 277 (1977), *cert. denied,* 433 U.S. 910, 97 S. Ct. 2976-77, 53 L.Ed.2d 1094 (1977). HHCA § 209(1) unequivocally (1) grants to the lessee the right to designate the successor to his lease from among his relatives specified therein, (2) provides that such designation will vest the lessee's interest in the lease upon his death, (3) requires the designation to be in writing and filed with and approved by DHHL, and (4) states that the lessee has the right to change such designated beneficiary at any time.

Here, Charles met all of the requirements of HHCA § 209(1) and effectively changed the designated beneficiary of or successor to his lease from Karen to Anthony.

Karen argues that Charles' designation of her as the succes-

sor to the lease became irrevocable upon her rendering of the services she agreed to perform for Charles. We cannot agree since HHCA § 209(1) clearly indicates that a lessee has a right to change the designated successor *at any time* and the designated successor's interest in the leased land *vests* only upon the lessee's death. A private agreement cannot alter the plain language and import of HHCA § 209(1).

### B.

Plaintiffs advance the novel argument that (1) despite HHCA § 209(1), HHCA § 208(5) permits the transfer or agreement to transfer Charles' interest in the land to a native Hawaiian or Hawaiians[5] upon the approval of DHHL; (2) plaintiffs are native Hawaiians; (3) Charles agreed to transfer the lease to plaintiffs in consideration of plaintiffs' promise to demolish the old house and pay for the construction of a new house, which plaintiffs have fulfilled or are in the process of fulfilling; (4) DHHL approved the transaction when it permitted Leroy to "borrow" $18,000 and signed the April 4, 1972 Contract of Loan; and (5) consequently, there was an agreement to transfer the lease to plaintiffs and the designation of Anthony as successor was ineffective and null and void. The argument fails to sway us.

Like the language of HHCA § 209(1), the language of HHCA § 208(5) is plain, clear, and unambiguous. It explicitly provides that the lessee "*shall not* in any manner" transfer or agree to transfer the lease to anyone, except to "a native Hawaiian or Hawaiians, and then *only upon the approval*" of DHHL.

The enactment of the HHCA by the federal government was in response to the plight of the native Hawaiians. Its purpose was to place them upon the land to insure their rehabilitation. *See In re Ainoa,* 60 Haw. 487, 591 P.2d 607 (1979);

---

[5] HHCA § 201(7) (1976) defines the term "native Hawaiian" to mean "any descendant of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands previous to 1778."

N. Levy, *Native Hawaiian Land Rights,* 63 Cal. L. Rev. 848 (1975). By the enactment of the HHCA, the federal government undertook "a trust obligation benefiting the aboriginal people" and the State of Hawaii has now assumed such fiduciary obligation. *Ahuna v. Dept. of Hawaiian Home Lands,* 64 Haw. 327, 338, 640 P.2d 1161, 1168 (1982).

To protect the lessee from improvidently alienating or encumbering the lease, HHCA § 208(5) explicitly provides how such alienation or encumbrance can be effectuated and unequivocally states that the lease shall not "be subject to attachment, levy, or sale upon court process." In the best interest of the lessee, the fiduciary duty of approving or disapproving the alienation or encumbrance of the lease or an agreement to do so is imposed on DHHL.

We hold that plaintiffs failed to meet the requirements of HHCA § 208(5) to effect an agreement with Charles to transfer the lease to them. There was no DHHL approval for the alleged agreement to transfer. The April 4, 1972 Contract of Loan cannot be deemed the requisite approval. It merely evidenced the loan made by DHHL pursuant to HHCA §§ 214 and 215, which authorize DHHL to make loans to lessees and set forth the conditions of such loans.

C.

The trial court, as a matter of law, properly ruled in favor of DHHL,[6] Anthony, and Charles on the principal issue of whether Charles could and did effectively change the designated successor of his lease to Anthony.

---

[6] The trial court should have treated the motion to dismiss made by DHHL pursuant to Rule 12(b)(6), HRCP (1981), as a Rule 56, HRCP (1981), motion since an affidavit and exhibits were attached to the motion and were considered by the court. *See Towse v. State,* 64 Haw. 624, 647 P.2d 696 (1982); *Au v. Au,* 63 Haw. 210, 626 P.2d 173 (1981); *Rosa v. CWJ Contractors, Ltd.,* 4 Haw. App. 210, 664 P.2d 745 (1983). We view the April 29, 1977 order granting the motion to dismiss as an order granting summary judgment to DHHL. *See Gonsalves v. First Insurance Co.,* 55 Haw. 155, 516 P.2d 720 (1973). Viewed thusly, there was no genuine issue of material fact and DHHL was entitled to a judgment as a matter of law. *See Kainz v. Lussier,* 4 Haw. App. 400, 667 P.2d 797 (1983).

### III.

Plaintiffs also contend that certain findings contained in the May 25th Findings, Conclusions, and Order and in the October 23d Findings, Conclusions, and Order, on which the judgment was based, were clearly erroneous and that the award of $12,616 was inadequate.

We have reviewed the available record[7] and find that there is substantial evidence to support the trial court's findings. *See Shoemaker v. Takai,* 57 Haw. 599, 561 P.2d 1286 (1977); *Henmi Apartments, Inc. v. Sawyer,* 3 Haw. App. 555, 655 P.2d 881 (1982). Furthermore, the review does not leave us with the definite and firm conviction that a mistake has been made. *Kim v. State,* 62 Haw. 483, 616 P.2d 1376 (1980); *Stewart v. Smith,* 4 Haw. App. 185, 662 P.2d 1121 (1983).

Affirmed.

*Joseph A. Ryan (Ryan & Ryan,* of counsel) for plaintiffs-appellants.

*Allene K. Richardson (Cynthia H.H. Thielen* with her on the brief, Legal Aid Society of Hawaii) for defendant-appellee Charles Rodrigues.

*Gerald W. Grimes* for defendant-appellee Anthony Rodrigues.

*George K.K. Kaeo, Jr.,* Deputy Attorney General, for defendant-appellee Department of Hawaiian Home Lands, State of Hawaii.

---

[7] The bench trial was held on July 9 and August 10, 1979. The court reporter relocated to the mainland United States and there is no transcript of the August 10, 1979 proceeding. However, the record includes Rule 75(c), HRCP (1981), statements of the evidence and proceedings of plaintiffs, Charles, and the trial judge.